Next case, which is the Cardona v. Wooden-Bledsoe. This is the Court. I'm Adrian Rowe from Pittsburgh Duquesne University School of Law, and David McCreary is a law student at the school who has been admitted by order of court, and I ask that you yield after his argument. We thank you. Mr. McCreary. May it please the Court, my name is David McCreary. I represent the appellant, Mr. Jose Cardona. I would like to reserve two minutes for rebuttal. Granted. The question presented before the Court today is whether or not the District Court erred in summarily dismissing Mr. Cardona's habeas claim for lack of jurisdiction. I would like to point to three points in the record to show as to why it did err. The first point is Mr. Cardona's complaint, in which he states that he is a Mexican-American freedom fighter who advocates on behalf of the oppressed Mexican people against corrupt U.S. officials. The second point in the record is the BOP program statement, which claims to cognitively restructure inmates. The third point is the program statement in conjunction with the prison handbook, which looks to put an inmate in refusal status if he refuses a program, which can directly result in the loss of good time credits, which he has a statutorily mandated right to. Mr. McCleary, was there anything within Cardona's sentence itself that forbade the BOP from referring Cardona to the SMU? The record has not been fleshed out in the District Court enough to look at whether or not placement in the SMU has likely not been forbade by his sentence. How could development of the record through discovery or however alter or expand upon what is contained within the sentence itself? I think when looking at his complaint and his firmly held belief that he is a Mexican-American freedom fighter who advocates on behalf in conjunction with the program statement, which attempts to cognitively restructure an inmate's belief system, that would be something that the sentencing court did not anticipate in his 40-year sentence. That goes directly to the execution of his sentence, which has been decided by the Third Circuit to stand in habeas under both Woodall and McGee. I'm sorry. We'll go to the conditions of confinement issue, but I think what Judge Smith is getting at is what we're looking at here is a sentence, and obviously an ambiguous phrase. What does it mean to execute a sentence properly? Well, you can see in the McGee case that the issue there is a restitution by an obligation that is part of the sentence that the judge contemplates. Correct. What would we learn from discovery that would tell us, if it's not apparent on the record, that the sentencing judge in this case had reformation of character in mind or dissuasion of political beliefs as the goal of the sentence? I don't see how the judge could have anticipated that Mr. Cardona would go to prison and declare himself a Mexican freedom fighter and that the Bureau of Prisons would think that, well, some adjustment is needed. I think that his claim as being a Mexican-American freedom fighter has always been there. But when you look at the program statement in conjunction with that, to look at the record of how that would be applied to Mr. Cardona, this cognitive restructuring, which is to change his thinking, which he doesn't want to be changed, and which I don't think that the sentencing judge would have looked at a cognitive restructuring as being part of his sentence. He wouldn't have anticipated that. There's certainly a difference in McGee where he, in McGee, the sentencing judge had actually put in place the $20 limit, which was then raised by the Bureau of Prisons completely against the sentence. But I think the issue here is not whether there's relief potentially available. It's whether he picked the right vehicle. I mean, isn't what the court saying below, or what Judge Munley was saying, is that, all right, you may have a civil rights action under 1983, but this just simply doesn't fit within the statute you're trying to use. That's correct. That's not correct. Judge Munley does look at the idea that he should take it under a civil rights claim or a Bivens action rather than a habeas claim. But because Mr. Cardona is challenging the execution and possibly the duration of his sentence because of the interplay with the loss of good time credits as well, it's not just a Bivens action. It rings in habeas because of that execution. This change- But this isn't the only circumstance where a prisoner can lose good time credits. Anything can happen in a prison. That's correct. That would cause that to happen. If that becomes the standard, then don't we convert every conditions of confinement case that has any potential penalty that affects a duration of a sentence? And remember, it's not the duration of the sentence, it's how much there is a presumption that you get good time credit, that you earn it. Correct. But it's not extending the overall sentence. It's simply determining whether the release date comes earlier or later. How do we- And McGee makes that distinguishment by citing Lemur, where McGee asks the question, if I can quote McGee real quick, whether the question to be asked is whether granting the petition would necessarily imply a change to the fact, duration, or execution of a petitioner's sentence. It's not just looking at the duration under good time credits, but also this execution. And in the face of Woodall, where Woodall recognized a distinction from Lemur where it's not just factor duration, but also execution of the sentence, which rings in habeas. When looking at Mr. Cardona's belief, firmly held belief, which comes in direct collision with the BOP program statement of cognitive restructuring, this affects an execution of the sentence that was not contemplated by the sentencing judge. Well, but the problem begins with the transfer to a segregated unit within the present, right? SMU, correct. I see it in your brief that there is absolutely nothing in the law that says that the Bureau of Prisons couldn't have taken Mr. Cardona from a lesser security prison, moved him to a more maximum security prison. Absolutely not. Okay. Nothing would prevent that. What is the difference then between moving him from the general population to a segregation unit? What distinguishes that from the transfer cases, other than the fact that what he objects to, as I understand it, is the reconditioning. The difference is certainly that. The difference is the BOP. No, it's not conditions of confinement, Your Honor. It is a difference in the execution of his sentence, because when you look at that quantum level of change which Woodall discusses, this level of change occurs under the program statement. It is correct that there are multiple cases cited in the Third Circuit, unpublished mostly, that they throw out SMU immediately as conditions of confinement. It doesn't go to factor duration. But they miss the point, or maybe the point hasn't been raised. The point hasn't been raised of how that program statement can affect execution of the sentence. This program statement is being looked at for the first time under the SMU program to argue against this cognitive restructuring, which goes directly to the execution of Mr. Cardona's sentence. Just to be clear, is the SMU a program, or is it a different physical location for the inmate? It's both. It's both? It is both. Is it within the same institution? Mr. Cardona's SMU, I believe that there are other SMUs located throughout the federal system of the country. Mr. Cardona's is located in Lewisburg, here in the middle of the state. So he was transferred from the general population at Lewisburg to the SMU in Lewisburg. Correct. Which is a 18- to 24-month program. I understand that. Yes, which looks to— So it's more than just a program. Yes, it's more than just a program, which I think is what creates the conditions of confinement confusion. It's easy to look at that he's been put in a more restrictive, non-punitive SMU program, which is segregated from general population, and that sends up a red flag of condition. But it's not condition. When you look at it in conjunction with that program statement and his firmly held belief, it goes to the execution of a sentence, which then will—which will, in turn, affect the duration of a sentence as well under good time credits. Now, at least as the step one in this program, he's isolated to his cell most of the day. Correct. Which would be different than his privileges in the general population. That's correct. Okay. Now, what habeas relief are you seeking? The habeas relief would be to remand this to the lower court. Well, first would be to establish jurisdiction that he has— That's what you're asking us to do. Yes. But what kind of habeas relief are you asking? Well, it would look at the execution of his sentence and would say that this has directly affected the execution of his sentence, which in turn would affect his good time credits, and he would want his good time credits back. Okay. We say all that, but what do you want us to do? What do you want the district court to do? I would like the district court to look at the record, understand that this would affect the execution of his sentence, and then when— What's the relief you want from the district court? The return of Mr. Cardona's good time credits, which he has lost. Well, that's not really relief, isn't it? The relief he's seeking is not to be reconditioned? It would also have to be to look at the SMU program statement. Isn't that a First Amendment claim? Isn't that a condition for a confinement claim? That falls under condition, but in conjunction with his good time credits and with this execution of the sentence that he did not contemplate, that it wouldn't have been contemplated that he also had to be restructured. That goes to the execution, which in Woodall, which cites other circuits as to put into effect or carry out this sentence. But doesn't this run the risk of basically turning district court judges into prison wardens, trying to now make calibrated judgments as to when? Obviously, there are going to be punishments within a prison for behavioral violations, and there's no question, but there is a record of behavioral violation, or so it appears. It appears to be a record of behavioral violation. A district court judge has the ability to sit and decide, well, no, this time what the warden is doing goes a little bit too far, encroaching on somebody's beliefs? I think you have to look— Or behaviors? You would have to— Yes, you think that's what district court should be doing. No, I do not. I don't think he needs to look at the behavior of the inmate, but he does need to look at the behavior of the inmate and its interplay with the effectuation of the program statement. And that program statement has blanket terms that cover Mr. Cardona's right to religion and right to beliefs or, you know, these blanket First Amendment rights, you know, to cover themselves from these. But it's different if they only are using these to cover themselves, and then the actual implementation of that program does affect it. And that effectuation rings to the execution of Mr. Cardona's sentence. It's not a condition of his confinement. It's a change in the execution of his sentence. You indicated that your relief you're requesting is for the district court, under habeas, to restore the good time credits. Doesn't Pepper—doesn't the Supreme Court's recent decision in Pepper call that into question? I'm not familiar with Pepper. I'd have to brief that and get back to you on that answer. I'm sorry, Your Honor. Aside his political beliefs, could you then make the same argument with any other inmate? Let's assume that he's not there because he professes to be a Mexican freedom fighter. He's just a belligerent inmate. And any number of prisons have these four-step programs. It's been in penology for years and years. Could you make the same argument for him? I believe so. I think you need to look at that cognitive restructuring. And it's not the idea of lights out, and he has to follow those rules. It's not the idea of you have to eat your sandwich. These are rules that are established, and they're understood to be rules, that the sentencing judge would have expected the prisoner to follow when he was sentenced. I'm putting myself back in my usual role as a district court judge, and I'm trying to decide if I am looking at the results you want in this case. When do I decide that I've reached that point that it's time for me to intervene and tell the warden that, no, your program goes too far? I think you need to look at that program and see how it affects the execution of his sentence. And in this case, because of that firmly held belief, which is not something that the sentencing judge – it is a combination of factors, there's no doubt about that, that you have to look at what the sentencing judge might have anticipated in the sentence with how that execution is being implemented. So my triggering test is when good time credits are lost? That's part of the test. It's not only the trigger. I think the sentencing, as I think was the case here, and I have no ability to predict what someone will become. It's not uncommon for a person to be sentenced to prison and discover a political belief or a religious belief that they may not have exhibited any interest in prior to prison life. How do I anticipate that? How do I make that part of a sentence? Would it be something that I contemplated? It would be hard to anticipate that, but it would be something to anticipate a program statement to see if a collision may occur. So aren't we back where the lower court was that, yes, maybe this is a condition of confinement? A good civil rights case, but it's not an habeas case. I would have to say that I disagree because it goes to the execution. I see the amount of time. Thank you. We'll have you back on rebuttal, Mr. McCleary. Ms. Mersheimer. Good morning. My name is Kate Mersheimer. I'm an assistant U.S. attorney on behalf of the appellee, the warden of USP Lewisburg. When Mr. Cardona filed his habeas petition, he had only two claims in it, that he was placed in the special management unit in retaliation or to interfere with his ongoing litigation and that the program statement implementing the special management unit violated the Administrative Procedure Act. Now, as to the latter claim, that has not been briefed at all and has been waived. As to the first claim, being placed in the special management unit as a retaliatory act, that is clearly a Bivens case, which this court, albeit in an unpublished decision in Woodruff, held, was not a habeas matter at all. It was cognizable and habeas, but was a retaliation claim. Now, Mr. Cardona's counsel tries to save his habeas petition by arguing that being placed in the special management unit constitutes or falls within the execution of a sentence which would be under habeas. And he argues it in two ways, neither one which withstands review. One is that they have said that Mr. Cardona may lose good time credit. Now, I just heard my colleague say that for relief, he would ask the district court to return good time credit. There is nothing in the record reflecting that Mr. Cardona has lost any good time credit at all. In their reply brief, they say it's inevitable that he's going to lose good time credit. Again, there is nothing in the record that supports that. They have stated that the government admits that his failure to participate in the special management unit program may cause him to be docked good time credit. We do not concede that. We do not know what he's going to do in the future. But you're not conceding the issue that if he did lose, and it were established that he'd lost good time credit, that now a habeas remedy would be appropriate? If he commits some act or event, some disciplinary act for which he loses good time credit, then yes, he will be given his Wolf and Hill procedural due process rights, and for that particular matter, he could then, after he's exhausted his administrative remedies, file a habeas petition. But not just this general blanket, I don't want to be in the special management unit, you're affecting the execution of my sentence. Have you read Pepper? No, Your Honor, I have not. Okay. At least not by, I don't recognize it by the title of the name. You might want to look at it because there's some language in there that calls into question whether or not across the board. And I will, Your Honor, when I get back to my house. But the bottom line is that the boast that they're arguing is that he may, at some point, lose good time credit for not participating in the special management unit. This court rejected that argument in the Lehmer case and reaffirmed that statement in McGee. Now, as to the placement in the special management unit, that that somehow affects the execution of the sentence, the government does not agree with that at all. If you look at the program statement, this is not a punitive program. It is a rehabilitative program where inmates need, whose interaction requires greater management to ensure the safety, security, and orderly operation of the prisons. Now, what really they're arguing, if you look behind everything, is that they're saying that the conditions of the special management unit are atypical and a significant change that no one would expect. But if that's the case, that's conditions case. That's conditions confinement case under Bivens. And I would refer this court to your phrase case cited in our brief where then-Judge Alito held that placing inmates in a security threat group's management unit, very similar to the special management unit here, which he acknowledged was a behavior modification program, did not constitute, or this court held, did not constitute an atypical and significant hardship and did not exceed the sentence imposed upon him. I have addressed the other points in my brief, unless you have any further questions. No questions, thank you. Thank you. Mr. McCleary, you may have rebuttal. Your Honors, first I would like to request the opportunity to submit a letter addressing Pepper, as you discussed. Second, I would like to address the relief. We would need a remand to the district court to address what factually constitutes the cognitive restructuring to see for some inmates would this amount to a quantum change under the Woodall argument to affect the execution of his sentence. Finally, whether or not this placement has resulted in a loss of good time credits, it was summarily dismissed before we know if it was a loss of good time credits. So once again, the record would need to be fleshed out to see if this would end up in a loss of good time credits, which opposing counsel seems to think would result in the habeas jurisdiction. I'm not familiar with Pepper, so that may completely change that. One last question. You're in your third year of law school? Second year. I just finished my second year. You did better than I did after ten years of practice. Thank you very much, Your Honor. Is this your first opportunity to argue? Correct. Congratulations. Thank you very much. It's been an honor. Great job. Thank you. Tell Dean Gormley we said hello, and he should have made the trek to Philadelphia to watch. I definitely will. Tell him he can at least listen. I look forward to hearing it with him. Thank you. Thank you very much. Thank you. Well-argued case. We'll take it under advisement. Thank you.